IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

RIKI LYN O.,

   Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

   Defendant.

Civil Action No.
5:18-CV-1157 (DEP)

---

APPEARANCES:

FOR PLAINTIFF

CONBOY, McKAY LAW FIRM
407 Sherman Street
Watertown, NY 13601-9990

FOR DEFENDANT

HON. GRANT C. JAQUITH
United States Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OF COUNSEL:

PETER L. WALTON, ESQ.

DANIEL S. TARABELLI, ESQ.
LUIS PERE, ESQ.
Special Assistant U.S. Attorneys

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on October 30, 2019, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that the plaintiff was not

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated: November 13, 2019
         Syracuse, NY

```
 1                UNITED STATES DISTRICT COURT

 2                NORTHERN DISTRICT OF NEW YORK

 3

 4  RIKI LYN O.,                    )
                                    )
 5           Plaintiff,             )    CASE NO.5:18-CV-1157
                                    )
 6      vs.                         )
                                    )
 7  COMMISSIONER OF SOCIAL SECURITY,)
                                    )
 8           Defendant.             )
                                    )
 9

10              TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HON. DAVID E. PEEBLES
11            WEDNESDAY, OCTOBER 30, 2019
                  SYRACUSE, NEW YORK
12

13

14  FOR THE PLAINTIFF:  (by telephone)
         Conboy, McKay Law Firm
15       By:  Peter L. Walton, Esq.
         407 Sherman Street
16       Watertown, New York  13601-9990

17

18  FOR THE DEFENDANT:   (by telephone)
         Social Security Administration
19       By:  Luis Pere, Esq.
         J.F.K. Federal Building, Room 625
20       15 New Sudbury Street
         Boston, Massachusetts 02203

21

22

23

24       THERESA J. CASAL, RPR, CRR, CSR
           Federal Official Court Reporter
25            445 Broadway, Room 509
              Albany, New York  12207

               THERESA J. CASAL, RPR, CRR
         UNITED STATES DISTRICT COURT - NDNY
```

1  THE COURT: All right. Thank you both for
2  excellent presentations.
3  This matter was commenced by plaintiff under 42,
4  United States Code, Section 405(g) and 1383(c)(3) to
5  challenge a final determination by the Commissioner of
6  Social Security finding that the plaintiff was not disabled
7  at the relevant times and, therefore, ineligible for the
8  benefits sought.
9  The background is as follows: Plaintiff was born
10 in December of 1983, she is currently 35 years old. She was
11 25 years of age at the alleged onset of her disability in
12 February of 2009. She stands, depending on where you look
13 in the record, between five foot six inches in height at
14 page 500 and five foot eight inches in height, that's at 44
15 and 250. She weighs between 239 pounds, that is at page
16 500, and 250 pounds, as reported at pages 44 and 250 of the
17 administrative transcript.
18 Plaintiff graduated from high school and attended
19 one year of college, achieving a 3.29 grade point average;
20 that's reported at 311 of the administrative transcript.
21 Plaintiff is right-handed, she drives. She lives with
22 children; at various times, they were 7 and 3 and then later
23 11 and 7, in August of 2016, and it was noted that at the
24 second hearing, which was conducted on August 3, 2016,
25 plaintiff was pregnant. Plaintiff has a boyfriend.

1  Plaintiff last worked on January 27, 2009, that's
2  at page 162, although at page 44 in the hearing she
3  testified that she last worked in February of 2009.  She
4  worked as a grocery store cashier from 1999 to 2002, a donut
5  shop cashier in 2002 for two months, a rehabilitation center
6  direct care staff member from 2003 to 2007, a department
7  store cashier from 2007 to 2008 and a call center support
8  staff member from July 2008 to February 2009.  She left that
9  position when she became pregnant with her son.
10  Plaintiff suffers from both physical and mental
11  impairments that have been diagnosed.  Physically she has
12  lumbar spine issues.  She has undergone several magnetic
13  resonance imaging testings over time.  The -- in January of
14  2010, that's at page 261, she was -- the MRI results showed
15  a small central L5/S1 disc protrusion, a small right central
16  L3/L4 disc protrusion and a midline annular tear at L4-5.
17  On January 7, 2010, at page 260 -- I'm sorry, and that was
18  post surgery, at -- on March 31, 2010, she had an MRI that
19  revealed bulging discs at L3/L4, L4/L5 and L5/S1.  They are
20  moderately stenosing the canal.  This is the most likely
21  cause of her pain.  That's reported at 334.
22  On June 15, 2011, MRI results revealed mid-line
23  high signal zones present at L3/L4, L4/L5 and L5/S1 with
24  mild to moderate left foraminal narrowing at L4/L5.  On
25  August 28, 2012, findings included loss of disc space height

1   and disc hydrational signal at L3/L4 through L5/S1
2   inclusive, particularly at L4-5, all status quo.  No
3   abnormal signal has developed in the imaged portion of the
4   spinal cord.  That's at page 449.  The results carried over
5   to 450, and the impression is discogenic changes as
6   described above, and they reveal fairly mild bulges.
7            There was testing done on November 7, 2014, that's
8   pages 746 and 747, revealing diffuse disc bulges at L3/L4
9   and L4/L5 with minimal thecal sac compression and diffuse
10  disc bulge at L5/S1 level abutting the thecal sac.  The
11  previously noted disc protrusion is not seen.  There is no
12  other significant change.
13           The plaintiff underwent left L4/L5 hemilaminectomy
14  with foraminotomies for nerve root decompression at the
15  L4/L5 level on January 22, 2008.  It included the excision
16  of herniated nucleus pulposus by Dr. Ross Moquin.  Plaintiff
17  sees Dr. Lawrence Littell for pain management.  She did not,
18  however, undergo any physical therapy or injections; that's
19  at 505.  And she reported her TENS unit was working well in
20  October 2015.
21           Mentally, plaintiff suffers from depression,
22  bipolar disorder, anxiety, persecution disorder not
23  otherwise specified.  She has been hospitalized, including
24  in June of 2010, following a breakup with a significant
25  other.  She was counseling for a period of time at Mercy

1  Behavior & Wellness, more recently at Carthage Behavioral
2  Center with LMHCP Thea Durant every other week.  She -- at
3  Mercy, it was noted that she had missed four out of five
4  appointments, at 641.
5      In terms of medications, plaintiff has been
6  prescribed lamictal, Selecta, Soma, Topamax, Celexa, Ativan,
7  hydrocodone and Zanaflex; that's at page 164, 504 and 50.
8      Plaintiff has a fairly robust list of activities
9  of daily living, including she performs household chores,
10 cooks, does laundry, washes dishes, shops, drives, cares for
11 her children, bathes, dresses, goes to her friends' houses,
12 talks on the telephone, uses a computer, goes to her
13 mother's house.  In December of 2010, it was reported that
14 she was engaged in Zumba, and in July of 2013, swimming with
15 her children.  It was also reported in some of the treatment
16 notes that she was moving furniture.
17     Plaintiff smokes one pack of cigarettes per day,
18 or did at least, and that's at page 742.
19     Procedurally, plaintiff applied for Title II
20 benefits protectively and Title XVI benefits in June of
21 2011, alleging an onset date of February 1, 2009, and
22 claiming disability based on degenerative disc disease, back
23 problems and depression.
24     On October 22, 2012, Administrative Law Judge
25 Marie Greener conducted a hearing.  She issued a decision on

November 13, 2012, following that hearing, concluding that plaintiff was not disabled at the relevant times.

The Social Security Administration Appeals Council denied plaintiff's request for review of that decision on January 30th, if I read my notes correctly, 2014.

An appeal was brought to this court, resulting in a remand of the matter on April 16, 2015, by District Judge Mae A. D'Agostino, that's reported at 541 to 549, specifically the agency was required to review plaintiff's physical limitations and it was stated that the ALJ should have re-contacted Dr. Littell. The ALJ substituted her opinion for competent medical evidence, and also there should have been clarification of Dr. Sirotenko's opinion.

On August 5, 2013, the Social Security Administration Appeals Council remanded the matter pursuant to the directive of the District Court and vacated the earlier decision. A hearing was conducted again on August 3, 2016, by Administrative Law Judge Greener. She subsequently issued a decision on September 6, 2016, again finding the plaintiff was not disabled at the relevant times. That became the final determination of the Agency on August 31, 2018, when the Social Security Administration Appeals Council denied plaintiff's request for review.

In her second decision, ALJ Greener applied the familiar five step sequential test for determining

1   disability.  She concluded, first, that plaintiff had not
2   engaged in substantial gainful activities since her reported
3   onset date of February 1, 2009, although noting that she did
4   engage in some work activity in 2010.
5          At step two, ALJ Greener concluded that plaintiff
6   does suffer from severe impairments that provide more than
7   minimal limitation on her ability to perform basic work
8   functions, including lumbar spine herniated nucleus pulposus
9   and degenerative disc disease, affective disorder,
10  parenthesis, depression/bipolar disorder, closed paren, and
11  an anxiety disorder.  She concluded, however, that none of
12  those impairments met or medically equaled any of the listed
13  presumptively disabling criteria set forth in the
14  Commissioner's regulations and the listings, specifically
15  considering listings 1.04 and 12.04 and 12.06.
16         After surveying the evidence, Administrative Law
17  Judge Greener concluded that the plaintiff retained the
18  residual functional capacity to perform unskilled work at a
19  somewhat less than full range of light work, and
20  specifically ALJ Greener found that plaintiff can lift up to
21  20 pounds occasionally and 10 pounds frequently, sit six
22  hours in an eight-hour day and stand or walk a total of six
23  hours in an eight-hour workday, except she needs to
24  alternate sitting and standing at one-hour intervals with
25  five minutes in the alternate position, paren, a total of

six such periods per workday, closed paren, but does not have to leave the work area or be off task during the change of position. She further found that plaintiff can occasionally push, pull and bend and needs to work independently and not in conjunction with others and, additionally, requires routine tasks which do not significantly change in pace or location on a daily basis.

Proceeding to step four, ALJ Greener concluded that the plaintiff is unable to perform her past relevant work since all of those positions involve semi-skilled work.

At step five, the Administrative Law Judge noted, first, that if plaintiff were able to perform a full range of light work, the medical vocational guidelines on the grids would direct a finding of no disability, specifically citing Rule 202.21. Because there was erosion of the job base on which the grids are located -- are based, the Administrative Law Judge elicited the testimony of a vocational expert and based on that testimony and a hypothetical exam that mirrored the RFC finding, she concluded that plaintiff could perform as a cafeteria attendant, a cleaner/housekeeper, an electric cleaner and that there was sufficient numbers in the national economy in those positions and, therefore, concluded that plaintiff was not disabled at the relevant times.

As you know, my task is limited and the standard

1  that I apply is extremely deferential.  I must determine
2  whether correct legal principles were applied and
3  substantial evidence supports the determination reached.
4  "Substantial evidence" being defined as such evidence as a
5  reasonable fact finder would find sufficient to support the
6  conclusion.  As the Second Circuit noted in *Brault*, 683 Fed
7  3d 443, the Court can reject fact findings of an
8  Administrative Law Judge only if a reasonable fact finder
9  would have to conclude other than the Administrative Law
10 Judge.
11         The plaintiff has raised five issues that, to some
12 degree, overlap.  The first has to do with plaintiff's
13 treatment -- the ALJ's treatment of the plaintiff's GAF or
14 Global Assessment of Functioning scores; the second concerns
15 the treatment of the opinions of Dr. Littell as a treating
16 source; the third has to to with the analysis of plaintiff's
17 subjective complaints; the fourth, whether the RFC finding
18 was supported by substantial evidence; and the fifth,
19 whether the plaintiff -- I'm sorry, the ALJ substituted her
20 lay opinion for competent medical opinion evidence.
21         Looking at the GAFs, I note that the GAF is a
22 snapshot, it's a subjective analysis, addressing only one
23 point in time.  It is a fairly somewhat controversial bench
24 mark and, in fact, the DSM-V removes the GAF from
25 consideration.  Undeniably, the cases support and it is

1  logical to conclude that GAF scores by treatment providers,
2  in particular, can be factors that should be considered, and
3  they were in this case, but they're not necessarily
4  predictors of outcomes in the future.  *Trombley versus*
5  *Colvin* indicates that -- and I will get you a citation for
6  that; it is 2016 Westlaw 5394723 from the Northern District
7  of New York, 2016.  I note that plaintiff's GAF scores had
8  varied widely.  I know that it was reported that there were
9  some GAF scores in the 55 range and there were some in other
10 ranges.  A GAF score of 55, according to the DSM-IV,
11 represents moderate symptoms or moderate difficulty in
12 social, occupational or school functioning.  The plaintiff
13 in this case had GAF scores of 55 on November 3, 2010,
14 that's at 250; January 19, 2011, that's at 252; April 11,
15 2011, that's at 254; but also had GAF scores on June 10,
16 2009, of 60, that's at 305; 60 on November 16, 2009, that's
17 at page 341; 60 on April 18, 2013, that's at page 739; 61 on
18 May 18, 2009, that's at 300; and 65 on May 15, 2014, 768.
19 The GAF scores in the 60s reveal only some mild symptoms,
20 but generally functioning pretty well according to the
21 DSM-IV.  So, I don't believe that the GAF scores in this
22 case undermine the RFC, and as the Commissioner pointed out,
23 it's not necessary that the Administrative Law Judge cite
24 every piece of evidence and discuss or discount it
25 specifically, so I don't find that that provides a basis to

1  set aside the determination.
2          In terms of treating source, undeniably, the
3  opinion of the treating source regarding the nature and
4  severity of an impairment -- if that is an acceptable
5  medical source, that is -- is entitled to considerable
6  deference if it is supported by medically acceptable
7  clinical and laboratory diagnostic techniques and not
8  inconsistent with other substantial evidence.  And
9  undeniably, as plaintiff's counsel has noted, if the ALJ
10 does not give controlling weight to a treating source's
11 opinion, he must apply -- he or she -- several factors that
12 are spelled out in 20 CFR Section 404.1527 and 20 CFR
13 416.927.  The Second Circuit has said, however, that the
14 Administrative Law Judge need not slavishly recite each of
15 the factors, and if the analysis was sufficient to allow for
16 meaningful judicial review, that is sufficient.
17         In this case, there's no question, and plaintiff
18 doesn't argue otherwise, that the District Courts and the
19 Appeals Council's directives were followed.  Dr. Littell was
20 re-contacted.  Tellingly, as plaintiff's counsel --
21 defendant's counsel points out, Dr. Littell has said
22 essentially that it might be better to get -- to have
23 plaintiff undergo a functional exam in order to provide
24 meaningful opinions concerning her limitations, her physical
25 limitations.

1    The opinions of Dr. Littell are contrary to the
2    opinions of Dr. Lorensen. The weight accorded to
3    Dr. Littell is explained by the Administrative Jaw Judge in,
4    frankly, more detail than I've seen in some ALJs' decisions,
5    at 476 and 477. I believe it supports meaningful judicial
6    review particularly when taken as a whole. And I note that
7    although it is true that an Administrative Law Judge can't
8    substitute her opinion for a doctor's opinions, it is
9    permissible to consider clinical findings and treatment
10   notes, particularly when weighing contrary opinions. And
11   after all, it is the Administrative Law Judge's prerogative
12   to weigh conflicting evidence, as there was in this case.
13   In this case, Dr. Lorensen's opinion -- I'm
14   turning to the RFC now -- supports the physical aspects of
15   the residual functional capacity in this case. Although I'm
16   not wild about the form that was used, and I, frankly,
17   haven't seen it before, it is adequate, it is somewhat more
18   than a check-the-box form; it is somewhat vague, but I
19   believe supports the Administrative Law Judge's decision.
20   Walking, standing and sitting, there are only three
21   categories that could have been checked, and the ones that
22   were checked were "more than four hours," and I think it's
23   appropriate, particularly given the other evidence in the
24   case, for the RFC finding to include the ability to sit six
25   hours in an eight-hour day and walk or stand a total of six

1   hours in an eight-hour workday.

2   The RFC, the physical aspects, are also supported
3   by consideration of the activities of daily living.
4   Plaintiff's ability to do daily chores, to swim with her
5   children, care for her three children, move furniture --
6   that's at 846 -- her conservative treatment and her
7   declination to undergo physical therapy and injections, her
8   statements that the TENS unit has helped her and medication
9   has helped her, consideration of the possibility of
10  exaggerated symptoms. If you look at page 343 versus 346,
11  of the administrative transcript, it appears that plaintiff
12  may have overstated her gait issues when she underwent a
13  physical exam. And again, Dr. Lorensen's opinions, as a
14  consultative exam, is well accepted, can provide substantial
15  evidence.

16  In terms of the mental aspects, once again,
17  plaintiff's activities of daily living, her ability to
18  attend college and achieve a 3.29 grade point average, the
19  fact that she drives, cares for her children, she has
20  relatively modest mental status exams according to treatment
21  notes. Her treatment history includes a reference to
22  medication controlling her symptoms, some noncompliance --
23  indeed, four out of five missed appointments in
24  November 2009 at Mercy -- and the opinions of Dr. Harding,
25  although he's not an examining physician, his opinions,

*R.O. v. Commissioner of Social Security - 18-CV-1157*

1  having reviewed plaintiff's medical evidence, can provide
2  substantial evidence.
3      In terms of credibility, or what we used to call
4  credibility is now subjective -- the analysis of subjective
5  symptoms, that is governed by SSR 16-3p, plaintiff's -- the
6  ALJ's analysis of plaintiff's subjective complaints,
7  particularly if the opinion is taken as a whole, is fairly
8  extensive, from 474 to 481 is a good analysis of why the
9  plaintiff's subjective complaints were not found to be fully
10 credible, due to not being sufficient to provide for --
11 permit for meaningful review.
12     In this case, I don't believe the ALJ substituted
13 improperly her opinions for lay opinions.  She based her
14 opinions on Dr. Harding and Dr. Lorensen, as well as the
15 other relevant factors which we've discussed.
16     The bottom line is there were conflicting opinions
17 in this case, and provided that she met the requirements of
18 the regulations, it was for the ALJ to evaluate those
19 conflicting opinions.  The SSAC dictates in this case were
20 followed; it's a different case from case number one.
21     I find the RFC determination is supported.  The
22 hypothetical to the vocational expert at step five
23 approximated the residual functioning capacity findings and,
24 therefore, the vocational expert's testimony satisfied the
25 Commissioner's burden of proof at step five.  I am unable to

1  say that no reasonable fact finder could reach the result
2  reached by the Administrative Law Judge under *Brault*.
3  Therefore, I find substantial evidence supports the
4  determination.  I will award judgment on the pleadings to
5  the defendant.
6           Again, thank you both for excellent presentations,
7  I hope you have a good day.
8           MR. PERE:  Thank you, your Honor.
9           MR. WALTON:  Thank you very much, your Honor.
10                    (This matter adjourned at 11:39 AM.)
11                            - - - - -

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT - NDNY*

*R.O. v. Commissioner of Social Security - 18-CV-1157*

CERTIFICATION OF OFFICIAL REPORTER

I, THERESA J. CASAL, RPR, CRR, CSR, Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 30th day of October, 2019.

**/s/ THERESA J. CASAL**

THERESA J. CASAL, RPR, CRR, CSR

FEDERAL OFFICIAL COURT REPORTER

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT - NDNY*